UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHITNEY HANCOCK, *et al.* | |
| Plaintiffs, | Civil Action No. 13-939 (BAH) |
| v. | Judge Beryl A. Howell |
| URBAN OUTFITTERS, INC., *et al.* | |
| Defendants. | |

**MEMORANDUM OPINION**

The plaintiffs in this putative class action allege that two retailers in Washington, D.C., Urban Outfitters, Inc. and Anthropologie, Inc. (collectively, the "defendants"), violated two D.C. consumer protection statutes by requesting customers' ZIP codes in connection with consumer credit card purchases. *See* Compl. ¶¶ 1–5, ECF No. 1. Pending before the Court is the defendants' Motion to Dismiss, ECF No. 13, both counts in the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the defendants' motion is granted.

**I.    BACKGROUND**

The facts in this matter are simple: the plaintiffs allege that they were asked by the defendants' cashiers to provide their ZIP codes when they made purchases in the defendants' stores. *See* Compl. ¶¶ 23–39. The plaintiffs allege that this request violated two D.C. statutes, the D.C. Use of Consumer Identification Information Act ("CII Act"), D.C. Code §§ 47-3151, *et seq.*, and the D.C. Consumer Protection Procedures Act ("DCCPPA"), D.C. Code §§ 28-3901 *et seq.* Thus, the relevant factual allegations are described first, followed by a brief summary of the statutes in question.

1

### A. Factual Background

The two named plaintiffs, Whitney Hancock and Jamie White (collectively the "plaintiffs"), make similar allegations. Plaintiff White alleges that she was asked for her ZIP code on two separate occasions on June 5, 2013, when she purchased two items at a D.C. Urban Outfitters store with her credit card. Compl. ¶¶ 23–33. Plaintiff White alleges that she provided her ZIP code to the cashier, who "entered [it] into Urban Outfitters, Inc.'s point-of-sale register, *not* into the credit-card-swipe machine." *Id.* ¶ 27–28. Plaintiff Hancock alleges that when she made a credit card purchase at a D.C. Anthropologie store on May 24, 2013, she too was asked for her ZIP code and, upon providing it to the cashier, the cashier entered the information into Anthropologie's point-of-sale register. *Id.* ¶¶ 34–39.

The plaintiffs allege that "ask[ing] for a consumer's ZIP code when the consumer chooses to pay by credit card . . . is illegal." *Id.* ¶ 41. The plaintiffs further allege that the defendants have a "corporate policy" of asking for ZIP codes from consumers and, consequently, there are numerous people who "bought merchandise from the Defendants in the District of Columbia via credit card, and whose ZIP codes were requested or recorded by Defendants," who constitute the purported class of aggrieved persons. *See id.* ¶¶ 40–44.

### B. Statutory Framework

The plaintiffs allege violations of the CII Act and three subsections of the DCCPPA, D.C. Code §§ 28-3904(e), (f), and (t). Each statute is described in turn.

#### 1. *The D.C. Use Of Consumer Identification Information Act*

The CII Act prohibits, with certain exceptions not relevant here, any person "as a condition of accepting a credit card as payment for a sale of goods or services, request[ing] or record[ing] the address or telephone number of a credit card holder on the credit card transaction

form." D.C. Code § 47-3153(a).[1]  In order to state a claim under D.C. Code § 47-3153(a), a consumer must plead five elements relevant here: (1) that her "address or telephone number" (2) was requested or recorded (3) on "the credit card transaction form" (4) "as a condition of accepting a credit card as payment" (5) "for a sale of goods or services."  *See* D.C. Code § 47-3153(a).

The law further provides a statutory private right of action against any person who violates the CII Act.  *See* D.C. Code § 47-3154.  Specifically, "[a]ny person aggrieved by a violation of" the CII Act "shall be entitled to institute an action to recover actual damages or $500, whichever is greater," along with "attorney's fees and court costs."  *Id.*

### 2.  *The D.C. Consumer Protection Act*

The plaintiffs do not specify in their complaint which sections of the DCCPPA the defendants are alleged to have violated, but clarify in their opposition that they intend to allege violations of D.C. Code §§ 28-3904(e), (f), and (t).  *See* Compl. ¶ 56; Pls.' Opp'n Defs.' Mot. Dismiss ("Pls.' Opp'n") at 12, ECF No. 16.  Subsection (e) prohibits a person from making a "misrepresent[ation] as to a material fact which has a tendency to mislead."  D.C. Code § 28-3904(e).  Subsection (f) prohibits a person from "fail[ing] to state a material fact if such failure tends to mislead."  D.C. Code § 28-3904(f).  Subsection (t) prohibits the use of "deceptive representations or designations of geographic origin in connection with goods or services."  D.C. Code § 28-3904(t).

"The DCCPPA was enacted to 'assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices.'"  *Ihebereme v. Capital One, N.A.*, 933 F. Supp. 2d 86, 106 (D.D.C. 2013) (quoting *Grayson v. AT&T Corp.*, 15 A.3d

---

[1] Subsection (b) of the CII Act provides an exception from the general prohibition and authorizes the recording of the credit card holder's address or telephone number "if the information is necessary for the shipment, delivery, or installation of consumer goods, or special orders of consumer goods or services."  D.C. Code § 47-3153(b).

219, 244–45 (D.C. 2011)); *see* D.C. Code § 28-3901(b)(1) (same).  To state a claim under subsections (e) or (f), the plaintiff must plead: (1) the existence of a material fact that (2) the defendant either (i) under subsection (e), misrepresented or, (ii) under subsection (f), failed to state and (3) such statement or omission had a tendency to mislead.  D.C. Code §§ 28-3904(e–f); *see Grayson*, 15 A.3d at 251.  To state a claim under subsection (t), a person must plead that: (1) a "deceptive representation[] or designation[]" of (2) "geographic origin" was made (3) in connection with goods or services.  D.C. Code § 28-3904(t); *see Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 257 (D.C. 2013).  The DCCPPA "shall be construed and applied liberally to promote its purpose." D.C. Code § 28-3901(c).

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); FED. R. CIV. P. 8(a).  A motion under Rule 12(b)(6) does not test a plaintiff's likelihood of success on the merits; rather, it tests whether a plaintiff properly has stated a claim.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds" of "entitle[ment] to relief." *Twombly,* 550 U.S. at 555 (alteration in original).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 557) (alteration in original).  The Supreme Court stated that "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).

## III. DISCUSSION

The plaintiffs premise their DCCPPA claim in Count II on their CII Act claim in Count I. Specifically, the plaintiffs allege that "engaging in the illegal behavior," under the CII Act, of requesting a ZIP code without disclosing that providing a ZIP code is not "necessary to complete the transaction" and "is optional" amounts to a misrepresentation of material fact, in violation of the DCCPPA. *See* Compl. ¶¶ 61–64. Thus, the Court first explains why the plaintiffs' CII Act claim is fatally flawed before evaluating their DCCPPA claim.[2]

### A. CII Act Claims

The complaint fails to meet four requisite elements to state a *prima facie* case for a violation of the CII Act.[3] First, the plaintiffs must plead that their "address or telephone number" was requested or recorded. The word "address" is not defined in the CII Act, *see* D.C. Code § 47-3151 (defining terms for D.C. Code Title 47 Chapter 31A), and must therefore be afforded its common meaning. *See FCC v. AT&T Inc.*, 131 S. Ct. 1177, 1182 (2011) (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010)); *Cal. Indep. Sys. Operator Corp. v. FERC*, 372 F.3d 395, 400 (D.C. Cir. 2004) ("[W]e begin with a 'plain language' analysis of the statutory text. That is, we assume 'that the legislative purpose is expressed by the ordinary meaning of the

---

[2] The plaintiffs dispute the defendants' assertion that the plaintiffs have failed to plead the presence of a sufficiently particularized injury giving rise to Article III standing. *See* Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem") at 14–16, ECF No. 13-2; Pls.' Opp'n at 20–26; Defs.' Reply Pls.' Opp'n Defs.' Mot. Dismiss ("Defs.' Reply") at 15–17, ECF No. 17. Since the plaintiffs have failed to state a claim upon which relief can be granted, it is unnecessary to also address this alternative ground for dismissal.

[3] The parties do not dispute that the purchases alleged in the complaint were for "goods" within the meaning of the CII Act, and therefore do not dispute that the fifth element is met. *See* D.C. Code § 47-3153(a).

words used.'" (quoting *Sec. Indus. Ass'n v. Bd. of Governors*, 468 U.S. 137, 149 (1984))). The plaintiffs offer a dictionary definition of "address" as being "[t]he location at which a person or organization may be found or reached." Pls.' Opp'n at 9 (brackets in original).

In an attempt to shoehorn the defendants' cashier's request for a ZIP code into the statutory prohibition on requesting or recording addresses, the plaintiffs make two arguments. First, they argue that a ZIP code is an essential part of an address. *See* Pls.' Opp'n at 8. Second, they argue that a ZIP code is, by itself, an address. *See id.* at 9. Neither argument is availing.[4]

First, under the plaintiffs' definition of address—"the location at which a person or organization may be found or reached," Pls.' Opp'n at 9—a ZIP code is the only component of an address, as that term is commonly understood, that is *not* necessary, contrary to the plaintiffs' assertions.[5] One may locate the United States District Court for the District of Columbia if one knows its building number, 333, street, Constitution Ave. NW, and city, Washington, D.C., even if they have no knowledge of the Court's ZIP code. Yet, if one knew only the Court's ZIP code—20001—one would be unable to pinpoint the Court's location, since the ZIP code refers to an area of 2.184 square miles. *See* U.S. Census Bureau, *2013 ZIP Code Tabulation Areas Gazetteer File*, 2013 *available at* http://www2.census.gov/geo/gazetteer/2013_Gazetteer/2013_Gaz_zcta_national.zip. Although a ZIP code is, as the defendants admit, part of an address, *see* Defs.' Mem. Supp. Defs.' Mot.

---

[4] The plaintiffs argue that the Court should resort to legislative history and contextual reading in an attempt to define "address." *See* Pls.' Opp'n at 4–5. The plaintiffs are correct that the word "address" must be read in context, *see Johnson*, 559 U.S. at 139 ("Ultimately, context determines meaning . . ."), but there is nothing in the statute to support the plaintiffs' broad view of the term "address," particularly in light of the common usage of the word and the definition provided by the plaintiffs. *See Cal. Indep. Sys. Operator Corp.*, 372 F.3d at 400 ("The issue is not so much whether the word [to be defined] is, in some abstract sense, ambiguous, but rather whether, read in context and using the traditional tools of statutory construction, the term" is clear).

[5] The cases relied upon by the plaintiffs to prove that a "ZIP code is an integral component of an address," Pls.' Opp'n at 8, are inapposite, since the defendants do not argue that a ZIP code is not a component of an address. The statute in question does not prohibit the request for an "integral component of an address," it prohibits the request of "the address . . . of a credit card holder." *See* D.C. Code § 47-3153(a).

Dismiss ("Defs.' Mem.") at 8 n.4, it is not, in and of itself, an address. By asking for a ZIP code, standing alone, a person is not asking for an "address."[6]

In support of their second contention, that ZIP codes are themselves addresses, the plaintiffs explain that a ZIP code "designate[s] small Post Offices or postal zones in larger zoned cities" where mail may be delivered. *See* Pls. Opp'n at 9. (quoting "ZIP Codes" *in* U.S. Postal Service, *The United States Postal Service – An American History 1775-2006*, (November 2012)). This merely confirms that ZIP codes may identify the general area of a locality where a person lives. The plaintiffs attempt to stretch this definition too far, however, when they assert that "[u]nlike house numbers and street names, which rely on numerals and letters that, by themselves, have little meaning, ZIP Codes are unique location identifiers. Therefore, ZIP Codes are addresses." *Id*. The plaintiffs' argument is simply incorrect.

As the defendants point out, a ZIP code contains thousands of addresses. *See* Defs.' Reply Pls.' Opp'n Defs.' Mot. Dismiss ("Defs.' Reply") at 8, ECF No. 17; *id.* Ex. B at 1 (U.S. Census Data Summary for Washington, D.C. ZIP code 20020 showing total population of 49,864 people residing in that ZIP code). Thus, a ZIP code is *not* a "unique location identifier" since tens of thousands of people and organizations have the same ZIP code. Consequently, a ZIP code cannot be considered the "address" of the "cardholder" since a ZIP code, at best, merely indicates an area in which multiple addresses may be located.

Therefore, in pleading that the defendants' cashiers asked the plaintiffs for a ZIP code when they made their credit card purchases, they have not pleaded that "the address . . . of a

---

[6] The plaintiffs argue that the CII Act must be construed broadly since it is a consumer protection statute. *See* Pl.'s Opp'n at 4–5. Even under the most liberal reading of the term "address," however, a component that merely identifies the general area in which a person's mail is delivered is a component of an address, not a full address. It is similarly irrelevant if, as the plaintiffs contend, a company may be able to learn an individual's address through the use of a commercially available database if the company has a person's ZIP code. *See* Compl. ¶ 22. The language of the statute prohibits "requesting or recording" an address from a consumer as a "condition" of making a credit card purchase on the "credit card transaction form." *See* D.C. Code. § 47-3153(a). Obtaining a consumer's address by other means is not prohibited by the statute. *See id.*

credit card holder" was requested. Accordingly, the plaintiffs have not pleaded the first and second necessary elements for a violation of the CII Act.

With regard to the third element, the plaintiffs have not pleaded sufficiently that the ZIP code, even if it were considered an "address," was requested here as a "condition of accepting a credit card as payment for a sale of goods." *See* D.C. Code § 47-3153(a). The plaintiffs allege that the request was made "[a]fter swiping [the plaintiffs'] credit card[s]." Compl. ¶ 26, 32, 37. The plaintiffs do not even hint that they were not allowed to use their credit cards unless they provided their ZIP codes to the defendants' cashiers; if anything, they assert that the transaction had already occurred when the request was made.

The plaintiffs introduce additional facts in their briefing, alleging that "[t]he credit cards were not returned, nor were the transactions completed, when the ZIP code requests were made." Pls.' Opp'n at 11–12. These allegations do not appear in the complaint and therefore are not properly before the Court on a Rule 12(b)(6) motion. *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d. 165, 170 (D.D.C. 2003) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Coleman v. Pension Benefit Guarantee Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)). Even if such allegations were before the Court, the plaintiffs have failed to indicate how this temporal proximity equates with an affirmative requirement that the plaintiffs provide their ZIP codes in order to complete the transaction. Thus, they have failed adequately to plead that the defendants conditioned the use of a credit card for the plaintiffs' purchases on the provision of a ZIP code.

Finally, with regard to the last disputed element—whether the plaintiffs' addresses were requested or recorded "on the credit card transaction form," D.C. Code § 47-3153(a)—plaintiffs allege that their ZIP codes were recorded into the defendants' "point-of-sale register, *not* into the

credit-card-swipe machine." Compl. ¶¶ 28, 33, 39 (emphasis in original).  Although the CII Act does not define the term "credit card transaction form," common sense would equate this "form" with the credit card receipt to be signed.

Indeed, the legislative history of the statute indicates that it was the recording of consumer telephone numbers and addresses "on a credit card sales slip" that provided the impetus for this law.  *See* Pls.' Opp'n Ex. B (Statement of Lacy C. Streeter, Acting Director, D.C. Dep't of Consumer and Regulatory Affairs, D.C. Comm. on Consumer and Regulatory Affairs Public Hearing on Bill 9-111, The Use of Consumer Identification Information Act of 1991) ("Streeter") at 7, ECF No. 16-2.[7]  Of particular concern to the D.C. legislature, as shown by testimony before the D.C. committee considering the bill, was the practice of merchants in 1991 of writing consumer identification information "directly on [a] check" provided to purchase an item.  *See* Pls.' Opp'n Ex. B (Statement of Gerri Detweiler, Education Coordinator, Bankcard Holders of America (Apr. 23, 1991)) at 1, ECF No. 16-2.  It was this recording of addresses, telephone numbers, and drivers' license numbers credit card sales slips, as well as the requesting and recording of credit card numbers on personal checks, that were the particular consumer threats to be remedied by the CII Act.  *See id.* at 1–3; *see also* Streeter at 5–7.  By pleading that the defendants used a system entirely separate from the credit card transaction machine to record the plaintiffs' ZIP codes, the plaintiffs have utterly failed to plead that the defendants recorded anything "on the credit card transaction form." *See* D.C. Code § 47-3153(a).  Indeed, it appears that the defendants took steps specially designed to adhere to the law by affirmatively separating the ZIP code information from the credit card information.  Consequently, the plaintiffs have failed to plead the fourth element of a violation of the CII Act.

---

[7] A court may take "judicial notice of facts on the public record," *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005), and the legislative history cited here was provided by the plaintiffs as an exhibit to their opposition.  *See* Pls.' Opp'n Ex. B.

The parties spend significant portions of their briefs discussing lawsuits involving other states' interpretations of consumer protection laws that are similar to the statute at issue here. *See* Defs.' Mem. at 8–10; Pls.' Opp'n at 9–11; Defs.' Reply at 9.  In those cases, *Pineda v. Williams-Sonoma Stores, Inc.*, 246 P.3d 612 (Cal. 2011), and *Tyler v. Michaels Stores, Inc.*, 984 N.E.2d 737 (Mass. 2013), the statutes in question prohibited the collection of a substantially broader set of consumer information.  In *Pineda*, the statute prohibited the collection of "information concerning the cardholder . . . including, but not limited to, the cardholder's address and telephone number."  *See Pineda*, 246 P.3d at 616.  Similarly, *Tyler* involved a Massachusetts statute that prohibited the writing of any "personal identification information" on "the credit card transaction form," and defined such information as "includ[ing], but [not] limited to, a credit card holder's address or telephone number."  *Tyler*, 984 N.E. 2d at 739–40.  Notably, neither the California nor the Massachusetts statutes required that the collection of such information must be a "condition of accepting a credit card as payment" to trigger a violation, as is the case in the CII Act.  *See Pineda*, 246 P.3d at 616; *Tyler*, 984 N.E.2d at 739–40.  To the extent that these cases are relevant to the instant analysis at all, they serve to illustrate the restricted nature of the CII Act as compared to similar statutes in other states.

Since the plaintiffs have failed adequately to plead four necessary elements of a violation of the CII Act, this cause of action is dismissed.

### B. The Consumer Protection Act Claims

The plaintiffs' DCCPPA claims are predicated on their erroneous interpretation of the CII Act, namely, that it is illegal to request a ZIP code from a consumer.  *See* Compl. ¶¶ 61–65.  As discussed *supra*, the plaintiffs have not pleaded any illegal activity under the CII Act: a ZIP code is not an "address," the defendants did not "condition" the credit card transactions on the

provision of a ZIP code, and there was no recording of the information on the "credit card transaction form."

The plaintiffs have also failed to plead any facts from which it can be inferred that by asking for a ZIP code, "the Defendants are misrepresenting a material fact that has a tendency to mislead; [namely,] that provision of a ZIP code is necessary to complete the transaction," Compl. ¶ 62, since the plaintiffs assert only that they were asked for their ZIP codes and freely provided them, *id.* ¶¶ 26–27, 32–33, 37–38. Although the DCCPPA "shall be construed and applied liberally to promote its purpose," D.C. Code § 28-3901(c), even under the most liberal interpretation of the plaintiffs' complaint, the plaintiffs have not pleaded that the transactions at issue would not have been completed had the plaintiffs not provided their ZIP codes. Therefore, the plaintiffs have failed to meet the *Twombly/Iqbal* standard to avoid a motion to dismiss, since they have not pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The plaintiffs have failed to allege the affirmative misrepresentation or omission of any material fact, since the request for a consumers' ZIP code is not impermissible under the CII Act, and the plaintiffs have not made any factual allegations from which it can be inferred that the provision of a ZIP code was required for the credit card transactions at issue.[8]

---

[8] The plaintiffs' tortured reading of subsection (t) of the Consumer Protection Act is incorrect. Pls.' Opp'n at 20 n.20. This subsection only applies to "deceptive representations or designations of geographic origin in connection with goods or services," *Floyd*, 70 A.3d at 257, and no rational reading of the subsection, which includes no commas or clauses, would find the term "deceptive representations" unrelated to the modifier "of geographic origin," as the plaintiffs suggest, *see* Pls.' Opp'n at 20 n.20. The Court rejects the plaintiffs' interpretation in favor of a plain reading of the subsection, as prohibiting only a deceptive representation of geographic origin or deceptive designation of geographic origin. *See* D.C. Code § 28-3904(t); *see Floyd*, 70 A.3d at 257; *Murray v. Motorola, Inc.*, 982 A.2d 764, 771 (D.C. 2009); *see also Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 174–75 (D.D.C. 2013). Under this correct reading of the subsection, the plaintiffs have failed to allege any facts from which the Court could infer that the defendants violated the subsection. *See generally* Compl.

### C. Dismissal With Prejudice

In this Circuit, dismissals with prejudice under Rule 12(b)(6) are disfavored and "warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citations omitted); *accord Rollins v. Wackenhut Servs.*, 703 F.3d 122, 132–33 (D.C. Cir. 2012) (Kavanaugh, J. concurring) (noting that this Circuit's "decisions have imposed a 'high' bar for Rule 12(b)(6) dismissals with prejudice," and that such "case law on Rule 12(b)(6) dismissals is not fully aligned with the Rules" since "[o]n the contrary, Rule 41(b) contemplates that a Rule 12(b)(6) dismissal ordinarily operates as a dismissal with prejudice, unless the district court in its discretion states otherwise."). This Court must balance the interests of efficiency and the timely resolution of complaints, as required by Federal Rule of Civil Procedure 1, with the liberal pleading standards contained in Rule 15(a) and the "high" *Firestone* standard in this Circuit for dismissal with prejudice. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006) ("The standard for dismissing a complaint with prejudice is high."). In keeping with these various requirements, dismissal with prejudice is warranted here since the plaintiffs' complaint is based on an erroneous interpretation of the CII Act that cannot be cured by additional factual allegations.[9] *See supra* Part III.A. Thus, any amendment of the plaintiffs' complaint would be futile.

---

[9] The plaintiffs have asked, in a footnote, for leave to amend their pleading if their DCCPPA claim is held to the higher pleading standard applicable to fraud or misrepresentation claims, as suggested by the defendants. Pls.' Opp'n at 13 n.11. The Court need not address whether the higher pleading standard for fraud under Federal Rule of Civil Procedure 9(b) is applicable to the plaintiffs' DCCPPA claim since a lack of particularity is not the fatal flaw in that claim. *See supra* Part III.B. The plaintiffs' request is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the plaintiffs have failed to state a claim upon which relief can be granted. Therefore, the defendants' motion to dismiss is granted.

An appropriate Order accompanies this memorandum opinion.

Date: March 14, 2014

_____
BERYL A. HOWELL
United States District Judge